# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:23cr122** |
| | : | |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **JAMES ADAMS,** | : | |
| **Defendant** | : | |

## MEMORANDUM

In the instant criminal matter, the United States of America charges Defendant James Adams with crimes arising from drug trafficking on or about January 26, 2023 in Luzerne County, Pennsylvania.  Before the court is defendant's motion to dismiss pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.  Specifically, defendant moves to dismiss Count 2, possession of firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) and Count 3, possession of firearms by a person convicted of a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. § 922(g)(1). (Doc. 21).  Having been fully briefed, this matter is ripe for disposition.

**Background**

On May 16, 2023, a grand jury in the Middle District of Pennsylvania indicted defendant.  (Doc. 1).  The indictment charges defendant with:

- Count 1 - possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1);

- Count 2 -possession of firearms in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c); and

- Count 3 - possession of firearms after being convicted of a crime punishable by imprisonment for a term exceeding one year, U.S.C. § 922(g)(1).

Defendant pled not guilty to all counts on June 5, 2023. (Doc. 11).

Defendant moved, without opposition, to continue trial on two occasions. (Docs. 16, 19). The Honorable Jennifer P. Wilson granted both continuances (Docs. 18, 20) and this matter was set for trial on December 4, 2023.[1]

On November 9, 2023, Defendant filed a motion to dismiss two counts of the indictment arguing that the charges in Counts 2 and 3 are unconstitutional based on New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022), and the Third Circuit's *en banc* decision in Range v. Att'y Gen., 69 F.4th 96 (3d Cir. 2023). (Doc. 21). On November 15, 2023, the court entered an order continuing trial pending the disposition of the motion to dismiss. (Doc. 23). The government filed a brief in opposition on November 22, 2023, (Doc. 25), and defendant filed a reply brief on December 8, 2023, (Doc. 29), bringing this matter to its present posture.

---

[1] Judge Wilson transferred this case to the undersigned on November 7, 2023.

**Legal Standard**

Defendant files this motion pursuant to Rule 12(b)(3)(B)(v).  Rule

12(b)(3)(B)(v) specifically "authorizes a defendant to lodge a pretrial challenge to

the sufficiency of an indictment for 'failure to state an offense.' " United States v.

Willis, 844 F.3d 155, 162 (3d Cir. 2016).

In considering a defense motion to dismiss an indictment, a district court

must accept as true the factual allegations set forth in the indictment. United

States v. Bergrin, 650 F.3d 257, 265 (3d Cir. 2011)(citations omitted).  The court

is limited regarding the matters it may consider during this analysis. See id. at

268.  Specifically, a pretrial motion to dismiss pursuant to Rule 12(b)(3) "allows a

district court to review the sufficiency of the government's **pleadings**," but it is

"not a permissible vehicle for addressing the sufficiency of the government's

**evidence**." United States v. Huet, 665 F.3d 588, 594-95 (3d Cir. 2012),

abrogated on other grounds by United States v. De Castro, 49 F.4th 836, 845 (3d

Cir. 2022) (emphasis added) (citation omitted).

Based on Bruen and Range, defendant challenges the constitutionality of

two counts in the indictment.  Initially, the court must decide if it may properly

consider matters outside the indictment in reviewing the defendant's motion.

3

Following Range, numerous decisions in the district courts[2] have looked beyond the indictment to determine whether § 922(g)(1) is unconstitutional as applied to each of those defendants on motions to dismiss or subsequent motions for reconsideration. See United States v. Quailes, No. 1:21-CR-0176, --- F. Supp. 3d ---, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023)(Wilson, J.)(considering convictions set forth in the government's brief and in attached criminal records); United States v. Reichenbach, No. 4:22-CR-00057, 2023 WL 5916467, at *1 (M.D. Pa. Sept. 11, 2023)(Brann, J.)(considering criminal records); United States v. Robinson, No. 4:22-CR-00362, 2023 WL 7021320, at *1 (M.D. Pa. Oct. 25, 2023)(Brann, J.)(same); United States v. Minter, No. 3:22-CR-135, 2023 WL 6051265, at *1 (M.D. Pa. Sept. 15, 2023)(Mariani, J.)(considering convictions set forth in the government's brief); United States v. Hedgepeth, No. 22-CR-377, 2023 WL 7167138, at *1 (E.D. Pa. Oct. 31, 2023)(Marston, J.)(relying on facts set forth in the government's opposition brief).

Other decisions note that Rule 12(b)(3) precludes a fuller consideration of the facts where the government has not included such details in an indictment. See United States v. Williams, No. 22-CR-228, 2023 WL 6810569, at *2, *4, n. 2, 8 (W.D. Pa. Oct. 16, 2023)(Hardy, J)(noting that a district court's review of the

---

[2] At least seventy motions to dismiss indictments have been ruled upon in the district courts within the Third Circuit's appellate jurisdiction in the seven months since Range was decided.

facts was confined to the indictment when the court only considered the defendant's previous conviction as detailed in the indictment and not the government's extensive recitation of the facts surrounding defendant's prior felony convictions in its brief); United States v. Woznichak, No. 21-CR-242, 2023 WL 7324442 (W.D. Pa. Nov. 7, 2023)(Hardy, J)(same).

Here, the indictment includes no details about defendant's prior convictions. (See Doc. 1).  The government, however, sets forth its version of the underlying facts throughout its brief in opposition. (Doc. 25 at 3-8).  Additionally, the government attaches to its brief the defendant's criminal records from the State of New York and the Commonwealth of Pennsylvania. (Docs. 25-1, 25-2). In his reply brief, defendant challenges the government's "factual allegations concerning the search that gave rise to the discovery of the firearm. . . ." and the "factual narrative presented by the [g]overnment." (Doc. 29 at 3, n. 4). Defendant, however, does not specifically challenge his prior convictions.

The court will thus proceed cautiously and narrowly in considering evidence beyond that alleged in the indictment, understanding defendant's constitutional rights, rapidly developing Second Amendment case law[3], and the willingness of

---

[3] On November 7, 2023, the Supreme Court of the United States heard argument on United States v. Rahimi, 22-915 and will be addressing whether 18 U.S.C. § 922(g)(8) violates the Second Amendment on its face.  Section 922(g)(8) prohibits the possession of firearms by individuals subject to domestic violence restraining orders.

district court judges to consider matters outside the indictments in § 922(g)(1) cases to varying degrees when ruling on motions to dismiss following Range. Specifically, the nature of a criminal defendant's prior convictions must be examined in any analysis addressing an as-applied challenge to a pending charge under § 922(g)(1).  While it would generally be inappropriate to consider "facts" submitted by the government found somewhere other than in the indictment, a person subject to possible conviction under § 922(g)(1) must have previously been convicted of some offense punishable by more than a year of imprisonment.  Any prior convictions would be supported by federal or state criminal records that cannot reasonably be disputed.  In this case, the court will consider defendant's criminal records and only those records in disposing of defendant's motion to dismiss.  The factual narrative offered by the government regarding defendant's prior convictions, the investigation and arrest in this case, and defendant's parole status will not be considered.

**Discussion**

**A. Defendant's Prior Convictions**

As noted above, Count 3 of the indictment charges defendant with violation of § 922(g)(1).  Section 922(g)(1) provides:

> It shall be unlawful for any person -- . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in

6

> or affecting commerce, any firearm or ammunition; or to
> receive any firearm or ammunition which has been shipped
> or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

In this case, defendant's criminal records reflect convictions in the State of New York and the Commonwealth of Pennsylvania.  In People v. Adams, No. 01736-2018 (N.Y. Sup. Ct., Queens Cnty.), defendant pled guilty on September 6, 2018 to one count of assault in the second degree in violation of N.Y. PENAL LAW § 120.05 02. (Doc. 25-1).  Defendant was sentenced to one (1) day of imprisonment and five (5) years of probation. (Id.).  On February 1, 2022, defendant was sentenced to time served for a violation of probation. (Id.).

Assault in the second degree is a class D felony in the State of New York. N.Y. PENAL LAW § 120.05 (McKinney). In New York, Class D felonies carry a maximum sentence of up to seven years in jail.  N.Y. PENAL LAW § 70.00 2(d) (McKinney).

Defendant also has prior convictions in Pennsylvania.  In Commonwealth v. Adams, No. CP-13-CR-1281-2018 (Carbon Cnty. Ct. Comm. Pl.), defendant pled guilty on September 26, 2019 to robbery in violation of 18 PA. CONS. STAT. § 3701(a)(1)(v) (Doc. 25-2 at 1, 6).  Defendant was sentenced to a minimum of eighteen (18) months and a maximum of thirty (36) months of incarceration.  (Id. at 6).  Defendant also pled guilty in that case to terroristic threats in violation of

18 PA. CONS. STAT. § 2706(a)(1). (Id. at 3, 8).  Defendant was sentenced to a minimum of six (6) months and a maximum of twelve (12) months of incarceration to run consecutive to his sentence on the robbery conviction. (Id. at 3, 8-9).  Additionally, defendant pled guilty to simple assault, in violation of 18 PA. CONS. STAT. § 2707(a)(1) and criminal trespass, in violation of 18 PA. CONS. STAT. § 3503(a)(1)(ii).  (Id. at 2, 4, 8).  On those charges, he was sentenced to a maximum of twenty-four (24) months of incarceration to be served concurrently with the robbery and terroristic threats offenses. (Id.).

Pennsylvania classifies crimes in seven (7) different categories. 18 PA. CONS. STAT. § 106(a)(1)-(7).  Defendant's Pennsylvania convictions range from a misdemeanor of the second degree to a felony of the second degree.  In Pennsylvania, misdemeanors of the second degree are punishable by a term of imprisonment, the maximum of which is not more than two (2) years.  18 PA. CONS. STAT. § 106(b)(7).  Defendant's other Pennsylvania convictions are punishable by longer maximum sentences.

Despite four recent applicable convictions[4], defendant argues that § 922(g)(1) is unconstitutional on its face and as applied to him considering the

---

[4] From the records supplied and a review of the applicable state statutes, all five of defendant's prior convictions in New York and Pennsylvania were punishable by imprisonment of more than one year.  For the purposes of § 922(g)(1) however, the term "crime punishable by imprisonment for a term exceeding one year" does not include "any State offense classified ... as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B).  This safe harbor provision would exclude from consideration defendant's

analysis in <u>Bruen</u> and <u>Range</u>, which discuss his rights under the Second Amendment.  Defendant likewise argues that § 924(c)(1)(A) is unconstitutional on its face and as applied to him under this case law.

## B. Second Amendment Case Law

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND II.

In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), the United States Supreme Court determined that the Second Amendment protects an individual's right to "keep arms," or "have weapons," and "bear arms," which means to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for defensive action in case of a conflict with another person." <u>Id.</u> at 583-84 (citations omitted)(ellipses removed).  The Second Amendment right is not connected to "participation in a structured military organization[,]" or "limited to carrying of arms in a militia." <u>Id.</u> at 584-85.

However, "[t]he right secured by the Second Amendment is not unlimited." <u>Id.</u> at 626.  <u>Heller</u> did not "read the Second Amendment to protect the right to bear arms for *any* sort of confrontation..." <u>Id.</u> at 595 (emphasis in original). The

---

second-degree misdemeanor conviction in Pennsylvania.  Defendant's other convictions, however, fall under § 922(g)(1)

Supreme Court also made clear that its decision in Heller did not cast doubt on "longstanding prohibitions on the possession of firearms by felons ...." Id. at 626. Per the majority opinion, prohibitions on possession of firearms by felons are "presumptively lawful measures." Id. at 626-27, n. 26.

McDonald v. City of Chicago, Illinois, 561 U.S. 742 (2010), reiterated this declaration when it incorporated the individual right to keep and bear arms against the states through the Fourteenth Amendment. Id. at 786, 791. Specifically, the Supreme Court stated:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S., at 626, 128 S.Ct., at 2816. We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons . . . ." Id., at 626-627, 128 S.Ct., at 2816-2817.

Id. at 786.

To summarize, Heller and McDonald recognized that the "Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 597 U.S. at 9. Bruen recognized that the Second Amendment right extends to "an individual's right to carry a handgun for self-defense outside the home." Id.

10

In rejecting "two-step" frameworks that had developed in the circuit courts for analyzing Second Amendment challenges, Bruen also explained the test applicable here, as one "rooted in the Second Amendment's text, as informed by history." Id. at 19.

An initial consideration is whether the Second Amendment's plain text presumptively guarantees and protects an individual's conduct.  Id. at 17 (discussing Heller).  A court must consider whether the individual is "part of 'the people' whom the Second Amendment protects."  Id. at 31-32 (citing Heller, 554 U.S. at 580).  A court must also consider whether the Second Amendment protects an individual's course of conduct.  Id. at 32.  Then, as summarized:

> [If] the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.
>
> Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

Id. at 17 (citation omitted, formatting modified, quotation marks removed).

When confronted with present-day firearm regulations, the "historical inquiry that courts must conduct will often involve reasoning by analogy…" Id. at

11

28. Although not "an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment..." Heller, McDonald, and now Bruen, "point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 29 (citations omitted). "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." Id. (citations omitted, quotation marks removed) (emphasis in original).

"[A]nalogical reasoning under the Second Amendment[,]" however, "is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. Such reasoning only requires "that the government identify a well-established and representative historical *analogue*, not a historical *twin*." Id. (emphasis in original). Furthermore, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.

Applying the test set forth in Bruen, the Third Circuit Court of Appeals determined that § 922(g)(1) was unconstitutional as applied to exactly one individual, Bryan David Range. Range, 69 F.4th 96. In so concluding, the Third Circuit stated:

> After Bruen, we must first decide whether the text of the
> Second Amendment applies to a person and his proposed

12

> conduct.  If it does, the government now bears the burden
> of proof: it "must affirmatively prove that its firearms
> regulation is part of the historical tradition that delimits the
> outer bounds of the right to keep and bear arms."

Id. at 101.

Range involved a civil action for declaratory judgment and injunctive relief.

Id. at 99.   The plaintiff pled guilty in 1995 to violating Pennsylvania law for

making false statements to obtain food stamps.  Id. at 98.  The conviction was

classified as a misdemeanor punishable by up to five years' imprisonment, which

precluded him from possessing a firearm under § 922(g)(1).  Id.  Range sought to

purchase a deer-hunting rifle and a shotgun for self-defense at home and lobbied

an as-applied challenge to § 922(g)(1) under his unique circumstances. Id. at 99.

Applying Supreme Court jurisprudence, the Third Circuit determined that

Range was one of "the people" protected by the Second Amendment. Id. at 101-

03.   The court also held that § 922(g)(1) regulated Second Amendment conduct

because Range's request to possess firearms tracked the constitutional right as

defined by Heller. Id. at 103 (citing 554 U.S. at 582).  As a result, the court

determined that the Constitution presumptively protected Range's conduct. Id. at

103 (citing Bruen, 597 U.S. at 17).  Moving to the question of whether the

government could justify applying § 922(g)(1) to Range, the court held that the

government did not carry its burden to show that the Nation's historical tradition

of firearms regulation supported depriving Range of his Second Amendment right to possess a firearm.  69 F.4th at 103-106.

Range represents a narrow decision, which the Third Circuit made explicit in its holding. Id. at 106.  Specifically, the court stated:

> Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) **only as applied to him** given his violation of 62 Pa. Stat. Ann. § 481(a). Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving **people like Range** of their firearms, **§ 922(g)(1) cannot constitutionally strip him** of his Second Amendment rights.

Id. (emphasis added).

In light of this jurisprudence, defendant challenges the constitutionality of his charges under § 922(g)(1) and § 924(c)(1)(A) in this criminal matter. Defendant's motion to dismiss raises facial and as-applied challenges to these statutes and his as-applied challenges will be resolved first.

### C. Whether Section 922(g)(1) and Section 924(c)(1)(A) are Unconstitutional as Applied to Defendant

An as-applied challenge to a statute, "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010).

14

In § 922(g)(1), Congress prohibited a person from possessing a firearm in or affecting commerce if he has been convicted of "a crime punishable by imprisonment for a term exceeding one year." Id.  A knowing violation is punishable by up to fifteen (15) years of imprisonment. See 18 U.S.C. 924(a)(8). Put another way, Section 922(g)(1) is a "straightforward 'prohibition[] on the possession of firearms by felons.' " Range, 69 F.4th at 104 (quoting Heller, 554 U.S. at 626).

Additionally, "[a]s one of several measures to punish gun possession by persons engaged in crime, Congress made [§ 924(c)(1)(A)] a discrete offense." Abbott v. United States, 562 U.S. 8, 12 (2010).  Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm " 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal 'crime of violence or drug trafficking crime.' " United States v. Davis, 588 U.S. ---, 139 S. Ct. 2319, 2324 (2019)(quoting § 924(c)(1)(A)).  "The minimum prison term for the offense described in § 924(c) is five years, § 924(c)(1)(A)(i), in addition to 'any other term of imprisonment imposed on the [offender],' " Abbott, 562 U.S. at 12 (quoting § 924(c)(1)(D)(ii)).  The basic purpose of § 924(c)(1)(A) is "to combat the 'dangerous combination' of 'drugs and guns.' " Muscarello v. United States, 524 U.S. 125, 132 (1998) (quoting Smith v. United States, 508 U.S. 223, 240 (1993)).

In an as-applied challenge to a firearms regulation, the court "must first decide whether the text of the Second Amendment applies to a person and his proposed conduct." Range, 69 F.4th at 101 (citing Bruen, 597 U.S. at 31-32). Here, the parties do not dispute that the Second Amendment applies to defendant.  They do dispute, however, how defendant's proposed conduct should be measured.  Defendant argues he possessed firearms in his home and that this conduct is presumptively protected by the Second Amendment. (Doc. 22 at 5). The government charges here, however, that defendant possessed firearms to traffic drugs, which, it argues, is conduct not protected by the Second Amendment. (Doc. 1 at 2-3, Doc. 25 at 29-30).

This case does not involve the straight question of whether § 922(g)(1) regulates conduct protected by the Second Amendment as in Range. See 69 F.4th at 103.  Here rather, defendant is also charged with violating § 924(c), which implicates facts that defendant possessed firearms while drug trafficking. Those facts cannot be divorced from the analysis of § 922(g)(1) or from his charge under 21 U.S.C. § 841(a)(1) as defendant suggests.  See Davis, 139 S. Ct. at 2338 (Kavanaugh, J., dissenting op.)("Ordinarily, when charged under § 924(c), a defendant will be charged with both an underlying federal crime and then also a § 924(c) offense.")

16

The government's argument is thus more persuasive.  The parties are not before the court in a declaratory judgment action because a person convicted of welfare fraud wanted to possess a firearm for home defense or hunting like in Range, see 69 F.4th at 103, or because two petitioners wanted to publicly carry handguns for self-defense as in Bruen, see 597 U.S. at 32.  Rather, according to the indictment, the government accuses defendant of knowingly possessing firearms in furtherance of a drug trafficking crime.

The text of the Second Amendment supports the government's position.  The Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation[,]" but the Supreme Court does not read " the Second Amendment to protect the right of citizens to carry arms for *any* sort of confrontation[.]" Heller, 554 U.S. at 595 (emphasis in original).  In later summarizing Heller, the Supreme Court remarked:

> Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in Heller, we held that individual self-defense is "the *central component* " of the Second Amendment right.  Explaining that "the need for defense of self, family, and property is most acute" in the home, we found that this right applies to handguns because they are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," **Thus, we concluded, citizens must be permitted "to use [handguns] for the core lawful purpose of self-defense."**

McDonald, 561 U.S. at 767–68 (original emphasis in italics, added emphasis in bold)(citations omitted); see also 780 ("the Second Amendment protects a

personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.")

Applying Heller, the Third Circuit has stated that, "[n]eedless to say, while the Second Amendment secures 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home,' it does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits." United States v. Napolitan, 762 F.3d 297, 311 (3d Cir. 2014) (quoting Heller, 554 U.S. at 635); See also United States v. Potter, 630 F.3d 1260, 1261 (9th Cir. 2011)("it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm in furtherance of drug trafficking").  Furthermore, conduct that triggers an application of § 924(c) "falls well outside the protection of the Second Amendment" because "[t]here is no lawful purpose in possessing a firearm to further drug trafficking." United States v. Dorsey, No. 4:22-CR-00092, 2023 WL 7019185, at *2 (M.D. Pa. Oct. 25, 2023)(Brann, J.).

Accordingly, the Second Amendment does not apply to the proposed use of firearms for criminal exploits, such as possessing firearms in furtherance of trafficking drugs. Defendant's as-applied challenges to § 922(g)(1) and § 924(c)(1)(A) thus both fail under the facts alleged in the indictment.

Assuming for the sake of argument that the Second Amendment did apply to defendant's proposed conduct, the government has met its burden in proving that § 922(g)(1) and § 924(c)(1)(A) have traditional historical analogues.

18

In opposition to the motion to dismiss the § 924(c) charge, the government finds support in Bruen's lengthy historical analysis about laws prohibiting the possession of firearms for particular unlawful purposes, such as terrorizing the general public. (Doc. 25 at 33-34).  Specifically, Bruen analyzed the Statute of Northampton, 2 Edw. 3 (1328), as it evolved through English history into American colonial and state crimes restricting the carrying of guns. 597 U.S. at 40-47, 49-52.  For example, statutes in colonial Massachusetts and New Hampshire codified the common-law offense of "bearing arms to terrorize the people." Id. at 46-47.  Additionally, laws in Virginia, Massachusetts, and Tennessee from the late 1700s and early 1800s prohibited bearing arms in a way that spread fear or terror among the people.  Id. at 50-52.

The Bruen Court also discussed criminal cases from the Antebellum South era. Id. at 51-52.  In particular, a North Carolina decision held that the Statute of Northampton was part of state law and that carrying a gun "for a 'wicked purpose' with a 'mischievous result … constituted a crime.' " Id. at 51-52 (discussing State v. Huntly, 25 N.C. 418 (1843)).  Another decision from Alabama from the same decade recognized that the common law "punished the carrying of such weapons

19

'for the purpose of an affray[5], and in such manner as to strike terror to the people.' " Id. at 52 (quoting O'Neil v. State, 16 Ala. 65, 67 (1849)).

These analogues did not persuade the Supreme Court that there was an historical tradition of broadly prohibiting the public carrying of commonly used firearms for self-defense.  See Bruen 597 U.S. at 39.  The government, however, analogizes these same statutes and decisions to further its argument that historical traditions "proscribing gun use for risky and dangerous purposes" apply to a "regulation designed to address the modern problem of armed drug dealers." (Doc. 25 at 35).  As long known, "distributors of dangerous drugs and users of firearms in the commission of crimes of violence;" are "persons found to be dangerous in a very real sense[.]" United States v. Perry, 788 F.2d 100, 113 (3d Cir. 1986).  Moreover, "drug dealing [is] not necessarily violent," but it is "dangerous because [it] often leads to violence."  Folajtar v. Att'y Gen. of the United States, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting op.)(citations omitted).

Bruen does not require an historical twin. See 597 U.S. at 30.  The court is thus persuaded by the government's argument by analogy that modern laws prohibiting drug traffickers from possessing firearms align with our Nation's

---

[5] "A noisy fight in a public place[,]" specifically, "the fighting, by mutual consent, of two or more persons in some public place, to the terror of onlookers." Black's Law Dictionary (11th ed. 2019).

historical tradition of firearms regulation and the historical regulations cited in opposition to defendant's motion are sufficient here to withstand defendant's as applied challenge to § 924(c).

In addition to the statutes and cases cited by the government, an extensive footnote from Judge Shwartz in a recent non-precedential Third Circuit opinion, United States v. Cash, No. 22-2713, 2023 WL 6532644, at *3 (3d Cir. Oct. 6, 2023), details "relevantly similar historical regulations that demonstrate that § 924(c) . . . is consistent with the Nation's tradition of firearm regulation." Id. at *4, n. 9.  Per that footnote, laws enhancing penalties for committing robbery and burglary while armed from the late 1700s and early 1800s from Connecticut, Massachusetts, Missouri, New York, and the Northwest Territories "impose comparable burdens on the right to armed self-defense," like § 924(c), and are "comparably justified." Id. (citations omitted).  For this additional reason, defendant's as-applied challenge to § 924(c)(1)(A) cannot succeed.

In opposition to defendant's motion to dismiss the § 922(g)(1) charge, the government has also identified numerous colonial-era and founding-era statutes establishing that the Second Amendment permits the disarmament of those who were "deemed dangerous or untrustworthy." (Doc. 25 at 22-23) (citing Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28, 1777, ch. 3 (Va.), reprinted in 9 William Waller

Hening, The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 281-83 (1821); Act for Constituting a Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90; 1692 Mass. Laws 11-12; Act for the Punishing Criminal Offenders, 1696-1701 N.H. Laws 15; Act for the Punishing of Criminal Offenders, 1696-1701 N.H. Laws 15).

In further support of its burden, the government also cites to Judge Krause's "extensive, scholarly account of the pertinent history of bans on firearm possession by felons and other dangerous persons[,]" in her dissenting opinion in Range. (Doc. 25 at 26, n. 11 (citing 69 F.4th at 120-28)).  As summarized in her dissent:

> At the Founding, a conviction for a serious crime resulted in the permanent loss of the offender's ability to keep and bear arms. Those who committed grave felonies—both violent and non-violent—were executed. *A fortiori*, the ubiquity of the death penalty suggests that the Founding generation would have had no objection to imposing on felons the comparatively lenient penalty of disarmament. Indeed, under English law, executed felons traditionally forfeited all their firearms, as well as the rest of their estate, to the government. That practice persisted in the American colonies and the Early Republic.

69 F.4th at 126–27 (footnote citations omitted).

Additionally, just three years before Range, a Third Circuit panel found historical support to uphold the felon-in-possession ban of § 922(g)(1) as applied to an individual convicted of tax fraud. Folajtar, 980 F.3d at 904-05. To the extent

that <u>Folajtar</u> is no longer good law following <u>Bruen</u> and <u>Range</u>, the dissent in that case canvassed opinions with historical analyses setting forth that "the limit on the Second Amendment right was pegged to dangerousness . . ." <u>Id.</u> at 914-18 (Bibas, J. dissenting op.)(discussing <u>Binderup</u>, 836 F.3d at 367-74 (Hardiman, J., concurring op.) and <u>Kanter v. Barr</u>, 919 F.3d 437, 451 (7th Cir. 2019)(Barrett, J., dissenting op.)).

In <u>Kanter</u>, then-Judge Barrett's dissent explored founding-era laws that disarmed those who "demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety." 919 F.3d at 454. Building upon that scholarship, she concluded, "founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." <u>Id.</u> at 458.

In this case, a consideration of dangerousness is appropriate based on the mere elements of defendant's prior convictions. [6] First, by his 2019 guilty plea, defendant has admitted to committing robbery in Pennsylvania in violation of 18 PA. CONS. STAT. § 3701(a)(1)(v). (Doc. 25-2). To commit robbery under that specific subsection, a person must "physically take[] or remove[] property from the person of another by force however slight[,] in the course of committing a

---

[6] In <u>Range</u>, the Third Circuit did not reach whether dangerousness is the "touchstone" in a Second Amendment challenge to §922(g)(1) because the government "did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not." 69 F.4th at 104. The court discusses dangerousness in its analysis of § 922(g)(1) and § 924(c) as applied to defendant because of that unsettled question from the Third Circuit.

23

theft.  Id.  Moreover, robbery was one of the nine traditional felonies at common law and often punishable by death and forfeiture from twelfth-century England to the founding era. See Folajtar, 980 F.3d at 904-05 & n. 9.

In addition to the robbery charge, defendant also pled guilty to simple assault in the same case in Pennsylvania. (Doc. 25-1).  Conviction of simple assault requires proof that a person "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another." 18 PA. CONS. STAT. § 2701(a)(1).  Additionally, in 2018, defendant pled guilty to second degree assault in New York. (Doc. 25-1).  Under the statute and subparagraph charged, a person is guilty when he causes injury to a person by means of a deadly weapon or a dangerous instrument with intent to cause physical injury.  See N.Y. PENAL LAW § 120.05 02 (McKinney).

Defendant's past crimes suggest that he has acted dangerously by engaging in physical violence with a deadly weapon or dangerous instrument and depriving people of their property through force. Individuals like defendant were disarmed under historical analogues. The historical firearms regulations cited by the government thus are also sufficient to withstand defendant's as applied challenge to § 922(g)(1).

**D. Whether Section 922(g)(1) is Unconstitutional on Its Face**

Turning next to defendant's facial challenge to § 922(g)(1), that is the felon-in-possession charge, he must establish that "no set of circumstances" exist under which the law would be valid.  United States v. Salerno, 481 U.S. 739, 745 (1987).  "This is the 'most difficult challenge to mount successfully.' " United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011)(quoting Salerno, 481 U.S. at 745).

As noted above, Range addressed an as-applied challenge, not a facial challenge, and the Third Circuit did not hold § 922(g)(1) to be unconstitutional in all circumstances.  Additionally, Heller and McDonald provided assurances that felon-in-possession statutes are "presumptively lawful." Heller, 554 U.S. at 627; McDonald, 561 U.S. at 786.  The list of "presumptively lawful" regulations in Heller is not dicta.  United States v. Barton, 633 F.3d 168, 171 (3d Cir. 2011). [7]

---

[7] Barton, written by Judge Hardiman, was overruled in Binderup v. Att'y Gen. United States of Am., 836 F.3d 336 (3d Cir. 2016)(en banc)(plurality op.).  Judge Hardiman, writing a concurring opinion in Binderup, stated again that the list of "presumptively lawful" regulations in Heller and McDonald did not qualify as dicta. 836 F.3d at 359, n. 6 (Hardiman, J. concurring in part and concurring in the judgment). Binderup has since been abrogated by Bruen. See Range 69 F.4th at 100-01 (majority op.), 141 (Roth, J., in dissent).

Writing again for the majority in Range, Judge Hardiman found that the government could not carry its burden to show a historical tradition using the 1961 iteration of § 922(g)(1) as applied to Range despite arguments from the government relying on Heller's assurances. 69 F.4th at 103-04.  In a concurring opinion, Judge Ambro wrote separately to explain why the government's failure to carry its burden in Range did not "spell doom for § 922(g)(1)" because it remains presumptively lawful under Supreme Court jurisprudence.  69 F.4th at 109-11 (concurring op.).

As stated:

> [T]he Supreme Court has twice explicitly reaffirmed that nothing in the opinions it has issued "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." And although the Supreme Court in Bruen did not again repeat those precise words, Chief Justice Roberts, along with Justices Alito and Kavanaugh, provided reassurances in their concurring opinions that, once again, the Supreme Court did not seek to disturb prohibitions on the possession of firearms by felons . . .
>
> Moreover, although the statements made in Bruen that are noted above consist of concurring and dissenting opinions, the Court takes the emphatic and purposeful statements of those Justices at face value and is unwilling to ignore them. This means that there are at least five sitting Justices on the Supreme Court who are unwilling to strike down § 922(g)(1) as facially unconstitutional, notwithstanding the new legal test devised in Bruen to analyze the constitutionality of any law that implicates the Second Amendment. Consequently, the Court concludes that § 922(g)(1) remains facially constitutional.

Reichenbach, 2023 WL 5916467, at *5 (citations omitted).

Defendant references one decision where a federal district court judge in Illinois has concluded that § 922(g)(1) is facially unconstitutional. (Doc. 22 at 8)(citing United States v. Prince, No. 22-CR-240, 2023 WL 7220127, at *11 (N.D. Ill. Nov. 2, 2023)). A decision of another federal district court judge "is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S. 692, 709, n. 7 (2011). Thus, the court is not bound or persuaded by Prince.

Rather, the court agrees with the government that the "presumptively lawful" regulations list from Heller and McDonald remains binding in this circuit. (Doc. 25 at 21, n. 5) (citing Barton, 633 F.3d at 172, n. 2). Moving forward from Range, "a sound basis exists for § 922(g)(1)'s constitutional application in a substantial amount of cases." 69 F.4th at 111 (Ambro, J., concurring). Defendant's matter is one of those cases. Thus, defendant's facial challenge to § 922(g)(1) also cannot succeed and his motion to dismiss Count 3 of the indictment will be denied.

### E. Whether Section 924(c)(1)(A) is Unconstitutional on Its Face

Finally, defendant argues that § 924(c)(1)(A) is unconstitutional on its face. Circuit courts, however, have repeatedly rejected Second Amendment challenges to § 924(c), "all concluding that the Second Amendment does not protect the right to possess a firearm for unlawful purposes." Cash, 2023 WL 6532644, at *3 (non-precedential)(collecting cases). The court's research has not uncovered an instance where the United States Supreme Court or the Third Circuit Court of Appeals have ever held that firearm possession in furtherance of drug trafficking is conduct that is protected under the Second Amendment, let alone ruled that § 924(c) violates its protections on its face[8].

---

[8] The Supreme Court has found the "residual clause" defining "crime of violence" in 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague. Davis, 588 U.S. ----, 139 S.Ct. at 2336. This ruling did not extend to the "elements clause" of the definition. See Id. Moreover, Davis does

In the event that the Second Amendment does encompass the right to possess a firearm for assisting or carrying out a drug crime, the government has set forth sufficient historical analogues to justify that regulation.  Similar to the analysis above in Section C, defendant's facial challenge to § 924(c)(1)(A) fails and his motion to dismiss Count 2 of the indictment will be denied.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss Counts 2 and 3 of the indictment will be denied and this matter will be set for jury selection and trial.  An appropriate order follows.

---

not address any other portion of § 924(c) or its application to "drug trafficking crime[s]" under that statute.

28

Date: 1/4/24

_____
JUDGE JULIA K. MUNLEY
United States District Court